Good morning. May it please the court. My name is Eitan Kaslyanich. I am representing Michael Delegans in this appeal. Mr. Delegans applied for disability benefits in February 2009, alleging disability since December 2007, which is when he was hospitalized, and while hospitalized suffered acute respiratory failure. Since then, he's recovered from many of the impairments that he had when at the time of the hospitalization he was in bad shape then, but he continues to suffer from ulcerative colitis, depression, bipolar disorder, anxiety, and a pain disorder. I'd like to now focus on the main errors here in the ALJ's decision to require reversal. First and foremost, there's the issue of the ALJ rejecting every medical opinion regarding the mental functional limitations that Mr. Delegans was experiencing. This case is a little bit unusual in that respect because I encounter a lot of cases where an ALJ will reject every treating source, every examining source, and will instead attempt to rely on the opinion of a non-examining source who never even reviewed the entire file. It's a common problem we see. In this case, what makes it a little different is the ALJ also rejected the non-examining source. So in weighing the evidence regarding mental functional limitations, the ALJ rejected everything. Well, I mean, you can do that if it gives specific legitimate reasons to do so. Actually, you can't. When it's uncontradicted, and that's what we have here. We have uncontradicted evidence because there isn't even a... You're correct. If a treating doctor's opinion is contradicted by another, then the ALJ can do it. Right. And so here it is uncontradicted evidence. The other thing is that, and I do run through in my briefs that all of the reasons that the ALJ gave for rejecting the opinions of Mr. Delegans' treating physician, Dr. Howley, and the two examining psychologists, Dr. Kenderdine and Dr. Whitlin, none of those reasons are convincing. They're not even legitimate reasons. And not only that, but because Dr. Howley's opinion is overall, it's consistent with the other evidence of records, or I should say it's not inconsistent with it. It was actually entitled to controlling weight under Social Security rules. And also the case of Orens discussed that and said, well, and even if it isn't, even if a treating physician's opinion isn't quite entitled to controlling weight, it's still entitled to deference. But here it was given essentially no weight at all. And so that's the biggest issue here, is the treatment of the mental functional limitations. And those limitations, as opined by Dr. Howley, Dr. Kenderdine, and Dr. Whitlin, should be credited as true because the ALJ did not state any convincing reason for rejecting all that evidence. The second issue here is that Mr. Delegans, he was treated by Dr. Howley also for his ulcerative colitis, and he ended up with a treating gastroenterologist, Dr. Leung. And Dr. Leung ultimately submitted a statement saying that he believed that even with medication, the treatment was working, he was relatively stable, but nevertheless when he would have exacerbations, he would miss work. And he estimated that during those exacerbations he would miss three or more days of work per month. This was similar to the opinion of Dr. Howley. The ALJ did not state, and this is a little bit more complicated, is that she needed convincing reasons or legitimate reasons. The only contradictory evidence is the opinion of a non-examining physician, state agency physician. But that state agency physician last reviewed the file, I believe it was April 2009, so did not review anything after that. And so arguably from that point forward, Dr. Leung's opinion is uncontradicted. In any event, because he was a treating specialist, his opinion was entitled to special weight, and it was given essentially no weight once again. The ALJ also, you know, those are the main errors, but one of the problems I saw in this case was that the ALJ never even mentioned the hospitalization where Mr. Deleganz had the acute respiratory failure. And he could have died. He didn't die. He recovered. But it appears from the record that this hospitalization, where he almost died, has contributed to his mental health symptoms. So it's a marker event. It's a key event in the medical records here, and it's never discussed by the ALJ. The record doesn't even include the medical records from that hospitalization. Through a quirk of record requesting, Social Security never requested that period of records. They started, I think, January 1st, and so hospitalization shortly before that apparently never got requested. I was not the attorney at the administrative hearing. Counsel, what were the reasons why the ALJ rejected Mr. Deleganz's testimony regarding the mental impairments? So, well, I discussed those in my brief. The main thing, before you even get to the reasons, you have to look at the underlying issue of the ALJ improperly rejecting all of the medical opinions. Because once the ALJ rejects all the medical opinions, they're supposed to, in considering a claimant's credibility, one of the main things an ALJ is required to consider is the medical evidence and whether or not it supports their testimony. But wasn't the medical evidence based on Mr. Deleganz's reporting? No, it was not. In part, it is always based in part on a claimant's reporting. And as an example, this is true in this case with regard to the ulcerative colitis. The frequency of diarrhea, frequency of the abdominal discomfort, that is something that really, unless you're living with a doctor, they're not going to witness every incident. But they are going to witness it when you go to the doctor and you're experiencing it at that time. Those are clinical findings. Those are not just you telling them about it. So, yes, with regard to the frequency, you're correct. With regard to the mental health aspects, no. Because he was taking medication, prescribed medication, and there's no evidence showing anything otherwise, that he had an ongoing issue with depression and anxiety. Dr. Halley described his tremor. He was having his tremor at the hearing. He was shaking at the hearing. I wasn't at the hearing. It's reflected in the record. So that's the first problem in looking at credibility. Keep that in mind. The credibility analysis was tainted by ALJ rejecting, improperly rejecting all of the supportive medical evidence. But with regard to the actual reasons she gave, there were only a few reasons. She talked about inconsistent statements because there were different doctors and doctors would report different times that the frequency of the problems with the ulcerative colitis. That reason doesn't take into account that it's an intermittent problem. It does vary greatly over time. It was much worse between 2008, 2009, and it got quite a bit better, but it would still recur. And so that was the thing that the ALJ was pointing at there, and it is an impairment that varies. The ALJ talked about his desire to work. He continued to want to work. He talked about wanting to work. He wants to work. And so the fact that somebody wants to work is not a reason to disregard their testimony about their symptoms, and the ALJ didn't use that as a reason to reject all the medical evidence, but it certainly isn't a valid reason to reject all the medical evidence either. The ALJ also talked about, well, he had been doing better in the past. He used to work even though he was having problems. He described how he'd have these recurrences. He'd have to leave work early. He'd lost jobs because of it, but he continued to work until the hospitalization where things really fell apart for him. So the fact that he used to work, well, that's true in pretty much every Title II case, every Title II case. They worked until they couldn't work anymore. So that's not a valid reason, a convincing reason to reject his testimony about how he was no longer able to handle work. And the other thing is that the ALJ there was focusing on the colitis. It had gotten really bad, and it was getting somewhat better, but the colitis I don't think is the primary reason he's not working here. The mental illness is really first and foremost what impedes his work on a day-to-day basis, and the colitis contributes when he has these intermittent recurrences. That's it. I mean, the ALJ doesn't have a convincing reason here for rejecting his testimony. Unless you have any questions, I'd like to reserve. What about Dr. Haley's opinion on Delegant's mental impairments? I think you were talking about Delegant's testimony regarding and what the ALJ said regarding his mental impairments. Can you tell me if there's no specific legitimate reasons to discount Dr. Haley's opinion on Delegant's mental impairments? Well, once again, there needed to be convincing reasons for rejecting her opinion. She was a treating physician. She was working closely in the same clinic with the mental health therapists, who none of their records are discussed by the ALJ, and none of their clinical findings are discussed by the ALJ. So Dr. Haley was in a good position, an unusual position of being able to rely not only on her own clinical observations and her own experience of treating him and seeing him face-to-face, but also on the treatment notes within her clinic from mental health therapists. And based on all of that, she came to the conclusion that he couldn't handle the stress of work, the fact that he would be having a tremor even in her office. The findings they described of him, these are visual things. You just look at him and go, he's not functioning that well. So yes, the ALJ's reasons, we have those right here in front of me. But... Well, ALJ says, for instance, that Dr. Haley's opinion is inconsistent with the record. Okay. Most of the ALJ's analysis of Dr. Haley's opinion involves issues regarding the ulcerative colitis, where she would talk to him and describe, it sounds like she thought it was more frequent and worse than he described it at some point. So there was some inconsistency or not complete consistency on the physical limitations. She also pointed out that he had a normal mental exam, but that's not what a doctor or physician or the therapist rely on. They also rely on their clinical observations, such as blunted affect, the tremor, the visible things that they could see in their examinations of him. And then their treatment of him. So although the ALJ arguably had some valid reasons for questioning some of the physical limitations described by Dr. Haley, and I'm not sure that she would need more than legitimate reasons for that, with regard to the mental health limitations, the reasons aren't even legitimate. She just barely, basically doesn't really discuss it adequately. It just points to the physical. If you don't have any more questions now, I would like to reserve my time. Okay, thank you. Thank you. May it please the Court, Lars Nelson on behalf of the Commissioner of Social Security. Your Honors, this Court should affirm the decision of the ALJ, finding Mr. Delligan is not disabled. Given that the argument appears to be that it's primarily based upon mental disability that's been presented here, I'd like to begin by responding to that. As to the Court's question about Dr. Haley, on page 32 of the ALJ's decision, the entire first paragraph is where the ALJ explains his weight given to Dr. Haley's mental opinion. The ALJ cites two reasons. First, the opinion is inconsistent with the record, and the ALJ goes on to contrast Dr. Haley's opinion with Dr. Kenderdine's opinion. Specifically, that point is pertaining to how Mr. Delligan interacts with supervisors, and Mr. Delligan's reported to Dr. Kenderdine that when he's worked in the past, he has no problems interacting with supervisors. And at Exhibit 4E, when he was initially filling out his functional report, he said that he has no problems with supervisors as well. And then the ALJ noted this inconsistency later on when discounting Mr. Delligan's subjective complaints related to that. As far as other social aspects, Mr. Delligan's. Isn't the ALJ required then to weigh several factors to determine what weight to give that opinion? I mean, wasn't there a whole other step there that the ALJ was required to do, like how long did the relationship between the doctor and the patient? Did the ALJ do that here? The ALJ is required to consider all the factors in 20 CFR 404.15.27 and 416.9.27. That's 404.14.27. Is it 1527? It's 1527, yes. Okay. But consideration is not comparable. It's a required discussion. Here we can say that all things being equal, the ALJ was most persuaded by the reasons that she provided. There's no hierarchy of reasons in the commissioner's regulations. So it's not required to weigh the factors? I thought it was. Not in this circuit, Your Honor, no. There's no authority requiring the ALJ to specifically discuss and specifically weigh each factor set forth in the commissioner's regulations. But the regulation requires the ALJ to give weight to several factors to determine which weight to give the entire opinion. It requires them to consider. And it requires these, this is our. But it doesn't look like the ALJ considered those factors. One of them was how long the doctor relationship lasted. That's one of the. Yes, and that would certainly go in Dr. Haley's favor. But the ALJ didn't do that. And I don't think the ALJ did it for Dr. Lung's opinion either. Is that correct? Well, but the ALJ, there's no confusion here that the ALJ recognized that Dr. Leung was a treating source, recognized Dr. Haley was a treating source. The factors that are set forth in the commissioner's regulations don't say one factor carries a greater weight unless it's a treating source that's uncontradicted by other evidence in the record. I would be amazed if this Court ever sees such a case because, I mean, that's why we're fighting is there is evidence on both sides. The other factors, such as the specialization, the length of treating relationship, how well the treating source reviewed the record, whether it's consistent with the record, and then the catch-all, any other factors tending towards the weight. Those factors are all equal, and the ALJ has discretion in how the ALJ wants to assign weight to those factors. I think the Court can safely presume that the ALJ didn't find, in assigning little weight to Dr. Haley's opinion, the ALJ was not ignoring the fact he was a treating source, was not ignoring the fact that he had some access to records, but the ALJ found that what was more appropriate was the inconsistency with an examining source's opinion, which under Tonopetian, this Court has said that mere inconsistency with an examining source's opinion is a specific and legitimate reason to discount a treating source's opinion. And the ALJ also concludes at the end, the claimant has mostly normal mental exam findings, which refers back to the ALJ's discussion of the mostly normal mental exam findings. And for that, the ALJ relied on Dr. Kenderdine, Dr. Whitlin, Dr. Wilkinson. The ALJ actually gave weight to all these opinions that said for the cognitive functions, they were mostly mild to moderate, and then the ALJ accommodated those mild to moderate limitations. It's not clear to me on this record that this applicant's mental problems are, how would you say, mostly mild or not serious because, you know, consistently, I mean, they rated his GAF like in the low 50s. And to me, this guy obviously has a lot of serious problems and the treating physicians say that. I don't, it's hard for me to understand the basis for rejecting all the treating physicians' opinions and giving that low GAF score consistently. Well, the GAF scores in the 50s is, according to the DSM, falls within the moderate range. Well, at the very low end, right? Admittedly so, Your Honor. But the lack of specificity in the GAF scores alone is why the ALJ has to actually look at what the, whether, you know, whether he has a logical thought process, his fund of knowledge. And for that, the ALJ actually relied on mental status examinations performed by numerous examining doctors, including two by Dr. Kenderdine, one by Dr. Whittlon, who the ALJ rejected outright, also found only mild to moderate. And then even Dr. Haley himself in 2008 said he observed no anxiety or depression symptoms. So that is largely the finding. And under the commissioner's regulations, the ALJ is permitted to compare a doctor's opinion with how consistent it is with other evidence in the record. And the ALJ did so here. I would like to correct one point because it was said that the ALJ rejected all the mental opinions in this record. The ALJ did reject the non-examining source's opinion in this record, and it was because the non-examining source found no severe mental impairments. So the ALJ actually gave the claimant the benefit of the doubt and said, I am rejecting that opinion because there clearly are mental impairments that need to be accommodated for in this record. As far as the ulcerative colitis, the ALJ made three findings that this court, can guide this court's decision. One, the ALJ noted inconsistent statements by Mr. Delegans about the frequency of his flare-ups, the length of flare-ups, and the number of bowel movements that he would have during a day. And this was quite the contrast because he showed up to the hearing and testified that he had one to two flare-ups a month. And during those flare-ups, he would have to go to the bathroom up to four times in an hour. Whereas throughout the entire record, the ALJ goes into detail, explaining that it's consistently between one and three a day, and at most, four. So when we talk about a condition that has, I guess, peaks and valleys, where you have a condition where sometimes you're performing very well, and then sometimes you have a flare-up and you're performing poorly, the ALJ, in recognizing that this testimony was not credible, was saying even in his valleys, when he was at his worst, he still had at most only four bowel movements a day. And the ALJ also discussed the presence of blood and pain, and also found that these were actually very rare occurrences. Even when he describes pain, it's described as a mild discomfort. That's on page 490. And then we go to the point where after he starts treatment with Dr. Leung, it goes into remission, which is a point that undermines his credibility at the hearing, where he says he continues to have flare-ups. It also explains why from the point at which he starts treatment with Dr. Leung forward, that period is clearly, as far as colitis is concerned, there's no evidence of limitations from that. Dr. Leung doesn't find any that are credible, that are accounted for, because he actually performs a colonoscopy just four months before the hearing that shows no symptoms whatsoever. Finally, there's conflicting evidence on the physical, I get that. But the mental impairments, I'm just having a hard time understanding who would want to hire him to help around the office or clean their house. At the end of the day, that's what the ALJ found. And I know we have all these factors, regulations, and procedures, but at the end of the day, am I going to want this guy cleaning my house or helping around the office? Unfortunately, Your Honor, the standard is not if we put ourselves in the shoes of the employer. I understand that. But, Your Honor, he has friends that he plays cards with twice a week. They clearly have no problem with him being around. And he describes years and years of working, and only two instances where he walks off the job because of a problem with an employer. And if you look at his testimony on 65, there are situations that you and I might have done the same thing. He walks off because of a safety concern, and he walks off because he feels that a supervisor was not giving him a fair shake, where he was showing up, doing his job, and it just wasn't fair. So I'm not trying to sugarcoat it. You're saying he's just not trying hard enough at the end of the day? Is that what you're saying? He can work. He just doesn't want to work? It certainly might be a situation where he's applying for the wrong jobs, Your Honor, where he is applying for jobs that are more demanding than what his residual functional capacity accommodates. But the ALJ was very accommodating in this residual functional capacity report because even though he says, I play cards with friends twice a week, and that's in Exhibit 4E, the ALJ says, you're only required to have a job where you occasionally have contact with your coworkers. And even though he says, also in 4E, I generally get along pretty well with supervisors, and he tells that to Dr. Kenderdine as well. I generally get along. I have positive relationships with coworkers and supervisors. The ALJ said, you only have to work at a job where you have occasional and very brief contact with supervisors. He says, I have problems being around large crowds, and the ALJ accommodates that and says you only have occasional contact with the public. So wherever we see symptoms, the ALJ accounts for them, and the ALJ has substantial evidence supporting those opinions, especially from the mental status exams performed by Dr. Kenderdine, Dr. Wilkinson, and Dr. Whitlawn. And unless the Court has any other questions, I would just quickly address the point about the tremors. It is the position of the Commissioner that to just describe tremors is not a diagnosis. Tremors have to come from somewhere. They might come from drinking too much coffee. They might come from arguing before the Ninth Circuit. But they were cited in May of 2007, so they do not qualify as a disabling impairment. And if you look at the record, Dr. Haley's record at 547 and 548 and 546, he actually says, I think they're psych-related. I have no idea what they are. And then for the final point, Your Honor, I would like to address this point that Dr. Leung didn't talk about lifting restrictions when assessing ‑‑ I mean the ALJ didn't talk about Dr. Leung's lifting restrictions. There is nothing in Dr. Leung's reports to support lifting restrictions about why somebody with colitis can't lift more than 25 pounds, especially when it's in remission. The ALJ made that explanation explicit for his walking restriction. And whether we have to go down the path of Lockwood saying that the ALJ ‑‑ we can clearly just tell the ALJ wasn't required to discuss everything. Or whether we have to go down the path of Molina and say the ALJ should have acknowledged this limitation but didn't. It would be a harmless error because the ALJ's reason for rejecting walking readily applies to also rejecting lifting. And if the Court doesn't have any other questions, I would just ask that the Court affirm the motion. Okay, I'd like to start with the main limitation here that he experiences, and this is in the opinion of his treating physician, Dr. Haley, both examining psychologists, is his inability to handle stress. That's the big issue here. That's the big issue that was not included in the residual functional capacity assessment. All the discussion about how well he did with supervisors, it's true, he was fine with supervisors. Nobody's questioning that. The question is whether or not he'd be fine with them now. But even take that away, even if we were to assume that that's not supported, that's not a reason to reject everyone's unanimous opinion about the inability to handle stress of a workplace. In my briefs, in the section with Dr. Haley's evidence, I discuss the evidence from the therapists who worked with her, and there are just numerous findings there of things like May 2009, his affect was constricted, his mood was anxious, his attitude was discouraged, his attention was distracted, etc., etc. Numerous clinical findings from this treating therapist. Not one of them is mentioned anywhere in the ALJ's decision. I just don't see how the ALJ can evaluate somebody's mental illness without discussing any of the clinical findings from the treatment providers, and then I don't see how she can convincingly reject the treating physician's opinion that's based on all those findings without discussing any of that evidence. And regarding the cards, yeah, he played cards one to two times a week. It doesn't say with who or how often, and that was in March of 2009. That is not a valid reason to reject all of the mental health findings and opinions from all of his treatment providers. Thank you. Thank you. Thank you for your arguments. The case is now submitted.
judges: Carney, TASHIMA, MURGUIA